UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

SECURITIES AND EXCHANGE COMMISSION,　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　Applicant,　　)　　　　Miscellaneous Business
　　　　　　　　　　　　　　　　　　　　)　　　　Docket No.
　　　　　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
CARLOS R. GARZA,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Respondent.　　)
_____)

**DECLARATION OF GRETCHEN LUNDGREN IN SUPPORT OF SECURITIES AND
EXCHANGE COMMISSION'S APPLICATION FOR
AN ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA**

I, Gretchen Lundgren, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.　　　　I am an attorney and a member in good standing of the bar of the Commonwealth of Massachusetts.  I am an attorney in the Enforcement Division in the Boston Regional Office of the U.S. Securities and Exchange Commission ("Commission").  I am participating in a Commission investigation In the Matter of GAW Miners, LLC, (B-02979).  I make this declaration in support of the Commission's Application for an Order to Comply with Administrative Subpoena.

2.　　　　This declaration is based upon information that the Commission staff has obtained from various sources described more fully below, during the course of the Commission investigation into the potential sale of unregistered securities by GAW Miners, LLC ("GAW Miners") and alleged fraudulent representations about those securities.

<u>The Commission Investigation</u>

3.       On February 3, 2015, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order") in an investigation entitled <u>In the Matter of GAW Miners, LLC</u>, (B-02979).   Among other things, the Formal Order directed that an investigation be undertaken to determine whether certain persons or entities had violated Sections 5(a), 5(c), or 17(a) of the Securities Act of 1933 ("Securities Act"), or Sections 15(a), 15(c), or 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.   The Formal Order designated certain officers of the Commission as having power to subpoena witnesses for documents and testimony, including Kathleen Shields and Gretchen Lundgren.   Because the Formal Order is a confidential document concerning a non-public investigation of the Commission, it is not attached to this declaration, but will be provided upon the request of the Court for *in camera* review.

4.       Staff in the Commission's Division of Enforcement are investigating possible fraud in connection with GAW Miners' sale of securities, as well as potential violations of the securities registration requirements and the broker registration requirements.

5.       GAW Miners purported to be a leader in the virtual currency "mining" industry. While GAW Miners started as a distributor of the computer hardware used in virtual currency mining, its business model transitioned, by the summer of 2014, to selling shares in the profits it claimed would be derived from its own virtual currency mining operations.   GAW Miners named these shares "Hashlets" because they were claimed to represent a share of the company's purported "hashing power," (or computing power), that would be devoted to virtual currency mining.   GAW Miners earned over $10 million in revenue from selling Hashlets to thousands of investors.

6. By late 2014, after the profitability of Hashlets began to wane, GAW Miners sponsored the introduction of its own, new virtual currency, known first as HashCoin, and eventually as PayCoin. Though GAW Miners represented to the public that PayCoin would have a fixed value of at least $20 (U.S. dollars) per PayCoin, in actuality, its value quickly declined and it is now trading at approximately $.04 per PayCoin.

7. This investigation centers around the potential securities law violations that occurred in connection with GAW Miners' sale of Hashlets, and its activities surrounding potential sales of investments related to PayCoin. In particular, the Commission is investigating whether GAW Miners' claims to investors about their virtual currency mining operations were false and misleading. GAW Miners and its Chief Executive Officer ("CEO") represented that all of the Hashlets of computing power that investors purchased would be pooled together to engage in virtual currency mining, and that investors' returns, or "payouts," would be calculated based on the success of those collective virtual currency mining operations. According to GAW Miners, buying a Hashlet allowed investors to mine virtual currency without the expense and expertise that would be required to purchase and maintain their own virtual currency mining equipment.

8. The Commission is investigating the possibility that GAW Miners and its CEO sold to investors far more Hashlets worth of computing power than the company actually had in its computing centers. The Commission is also investigating whether numerous material representations that GAW Miners made to Hashlet purchases were true, including representations about the profitability and longevity of Hashlets, Hashlets' mining activities, and how the payouts for Hashlets were derived.

9.    The Commission is also investigating whether GAW Miners' Hashlet sales had the hallmarks of a Ponzi scheme.  In particular, the Commission is investigating whether GAW Miners may have sold far more computing power than it owned and dedicated to virtual currency mining, and therefore, whether the company may have owed investors a return that was larger than any actual return it was making on its mining operations.  If GAW Miners did not have actual mining operations, that allowed it to earn the daily mining payout that it owed to Hashlet investors, then the payouts that investors received could only have been a gradual repayment over time, as "returns," originating from the money that they and others had invested.  As a result, some investors' funds may have been used to make payments to other investors.

10.    With respect to PayCoin, the Commission is investigating whether individuals and entities were induced to pay significant sums of money to GAW Miners in exchange for future rights to acquire interests in PayCoin, or methods of earning money dependent on PayCoin, whether the representations made in connection with these PayCoin rights were false or misleading, and whether these rights constitute securities that are subject to the federal securities laws.

11.    Another component of the Commission's investigation concerns what happened to the revenue that GAW Miners earned in bitcoin and other virtual currencies, with an equivalent value of millions of United States dollars.

12.    Respondent Carlos R. Garza ("Respondent" or "Garza") is the brother of GAW Miners' CEO and he began working for the company in approximately August 2014, shortly before GAW Miners began selling Hashlets to the public.  Though Garza had several roles at GAW Miners, he was primarily a salesman, and had responsibility for sales made through GAW Miners' resellers, and sales to "VIP" customers who had a high net worth or who made high

dollar value purchases from GAW Miners.  In those roles, Garza was intimately familiar with representations that GAW Miners made to its customers about both Hashlets, and later PayCoins.

13.     Garza also communicated with GAW Miners' CEO and others at the company about whether, and on what terms, GAW Miners could sell Hashlets, and later, rights dependent on PayCoins, to its investors.  In connection with his sales efforts, Garza also frequently communicated with customers about the ways in which they could pay GAW Miners with bitcoins.

### The Commission's Subpoena to Garza

14.     The Commission served Garza with a subpoena for testimony and documents on June 30, 2014.  Garza was ordered to produce documents on July 14, 2015, and appear for testimony on July 28, 2015.  A copy of the subpoena is attached hereto, as Exhibit A.

15.     Garza twice requested, and the Commission twice agreed, to extend his testimony date to secure counsel.  Garza was required to appear for testimony on Wednesday, August 12, 2015.  Garza appeared at the Commission's office on August 12, 2015 without counsel.  Before the opening of the record, the Commission's counsel, Kathleen Shields and Gretchen Lundgren, provided Garza with a copy of the Commission's Formal Order, and another copy of the Commission's Form 1662, which had also been attached to the subpoena served on him.  *See* Ex. A.  The Form 1662 explains how the Commission may use the information that witnesses provide during its investigations.  The Commission's counsel gave Garza the opportunity to ask any questions he wished to ask about those documents.  Though he stated that he did not understand them, he declined to ask any questions about them, or any of their provisions.

16.    Once the testimony began, and after Garza took an oath to tell the truth, he refused to provide any further substantive testimony.  A true and correct transcript of his testimony is attached hereto, as Exhibit B.

17.    During his testimony, Garza's responses to the Commission counsel's questions were articulate.  He had no trouble conversing in English.  I have also reviewed documents received during the course of the Commission's investigation, and those documents demonstrate that Garza is capable of communicating in written English.  During his testimony, Garza neither claimed nor demonstrated that he was lacking in ordinary intelligence such that his capacity to testify could be questioned.


Executed this 14th day of August, 2015, in Boston, Massachusetts.


                    //s//Gretchen Lundgren
                    Gretchen Lundgren