# Exhibit A



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street, 23rd Floor
Boston, MA 02110

DIVISION OF ENFORCEMENT

Gretchen Lundgren
Counsel
617-573-4578

June 30, 2015

<u>**Via Overnight Mail**</u>

Carlos Garza
136 Hillcrest Terrace
Brattleboro, VT 05301

　　　　Re:　　<u>In the Matter of GAW Miners, LLC (B-02979)</u>

Dear Mr. Garza:

　　　　The staff of the Boston Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you provide us documents. The subpoena also requires you to appear for testimony on July 28, 2015 at 9:30 a.m. at the above Boston address.

　　　　Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

**<u>Producing Documents</u>**

*What materials do I have to produce?*

　　　　The subpoena requires you to provide us the documents described in the attachment to the subpoena. You must provide these documents by July 14, 2015. The attachment to the subpoena defines some terms (such as "Document") before listing what you must provide.

　　　　You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain. All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment. In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

　　　　Documents responsive to this subpoena may be in electronic or paper form. Electronic documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards (the "Standards"). If you have any questions concerning the

Case 1:15-mc-91258-RGS   Document 1-3   Filed 08/14/15   Page 3 of 40

production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents. **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.** The staff may later request or require that you produce the native format.

For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards. Alternatively, you may send us photocopies of the documents in paper format. **If you choose to send copies, you _must_ secure and retain the originals and store them in a safe place.** The staff may later request or require that you produce the originals.

Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state to which numbered paragraph(s) in the subpoena attachment each item responds.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

Please also provide a narrative description describing what you did to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;

- who reviewed documents found to determine whether they were responsive;

- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, home office, work office, voice mails, home email, webmail, work email, backup tapes or other media);

- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and

- where the original electronic and hardcopy documents are maintained and by whom.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

- the reason you did not produce the item; and

- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved.  If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

> ENF-CPU
> U.S. Securities and Exchange Commission
> 100 F St., N.E., Mailstop 5973
> Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*What is the Background Questionnaire?*

A background questionnaire is also enclosed. During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that anyone has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions.  What should I do?*

     If you have any other questions, you may call me at 617-573-4578, or Kathleen Shields at 617-573-8904.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Gretchen Lundgren
Counsel, Division of Enforcement

Enclosures:    Subpoena and Attachment
                SEC Form 1662
                SEC Data Delivery Standards
                Background Questionnaire



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of GAW Miners, LLC (B-2979)**

To:     Carlos Garza
        136 Hillcrest Terrace
        Brattleboro, VT 05301

☒     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than July 14, 2015 at 9:30 a.m.

☒     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

Securities and Exchange Commission, Boston Regional Office, 33 Arch Street, 23rd Floor, no later than July 28, 2015 at 9:30 a.m.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:     _____          Date:  6·30·15
        Gretchen Lundgren, Counsel, Division of Enforcement
        U.S. Securities and Exchange Commission
        Boston Regional Office
        33 Arch Street, 23rd Floor
        Boston, MA  02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR CARLOS GARZA**
**June 30, 2015**
In the Matter of GAW Miners, LLC (B-02979)

## A.   Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.   "GAW Miners, LLC" ("GAW Miners") means the entity or entities doing business under the names "GAW Miners, LLC," "GAW Labs, LLC," "Geniuses at Work Corporation," and/or "GAW High Speed Internet, Inc.," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.   "ZenMiner, LLC" ("ZenMiner") means the entity doing business under the names "ZenMiner, LLC" and/or "ZenCloud," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

3.   "Business Technology for Cryptocurrency, LLC" ("BTC") means the entity doing business under the names "Business Technology for Cryptocurrency, LLC," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4.   "PayBase, LLC," ("PayBase") means the entity doing business under the names "PayBase, LLC," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.   "PayCoin, LLC" ("PayCoin") means the entity doing business under the names "PayCoin, LLC," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6.   "ZenCloud" means the cloud-hosted platform offered by ZenMiner and/or GAW Miners for digital cloud mining.

7.   "Hashlet" means the digital cloud miner designed to operate on ZenCloud.

8.   "Cryptocurrency" mean the decentralized digital monetary unit or coin that uses public key cryptography to secure and perform anti-counterfeiting functions embedded within the currency.

9.  "Hash Points" means the coupon and rebate reward system created by GAW Miners and which could be redeemed for the cryptocurrency PayCoin.

10. "Pool" means the digital cloud currency mining pools or Hash Point mining pools hosted by ZenCloud and/or GAW Miners and designed to be mined by Hashlets.

11. "ZenPool" means the digital cloud currency mining pool created and operated by GAW Miners, available for certain types of Hashlets to mine.

12. "Payout" means the compensation provided to Persons dedicating the hashing power of their Hashlets towards one or more Pools.

13. "Computing Power" means the total amount of power available to GAW Miners and/or ZenMiner to mine Cryptocurrency.

14. "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

15. "PayCoin" means the Cryptocurrency created by or developed for GAW Miners in December, 2014.

16. A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

17. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

18. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

19. "Concerning" means directly or indirectly, in whole or in part, describing,

constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

20.   An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

21.   The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

22.   The term "you" and "your" means the Person or entity to whom this subpoena was issued.

23.   To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

   a.   the word "or" means "and/or";
   b.   the word "and" means "and/or";
   c.   the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d.   the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e.   the singular includes the plural and the plural includes the singular.

**B.**     **Instructions**

1.      Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you must secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2014 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter.**  If you are not producing Documents based upon a

4

, prior production, please identify the responsive Documents that were previously produced.

10. For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

   a. its author(s);
   b. its date;
   c. its subject matter;
   d. the name of the Person who has the item now, or the last Person known to have it;
   e. the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f. the basis upon which you are not producing the responsive Document;
   g. the specific request in the subpoena to which the Document relates;
   h. the attorney(s) and the client(s) involved; and
   i. in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12. If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

**C.** **Documents to be Produced**

1.  Documents sufficient to disclose any title, position, salary, consulting arrangement, compensation arrangement and responsibilities you held with GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC.

2.  All Documents concerning GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC.

3.  All Communications in which you participated concerning GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC.

4.  Documents sufficient to identify all payments made by GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC to you or any entity you own or control.

5.  All Documents Concerning the present whereabouts of any asset or funds (including Cryptocurrency) transferred from GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC by Homero Joshua Garza or anyone acting at his direction or under his control.

6.  All Documents Concerning the present whereabouts of any asset or funds (including Cryptocurrency) transferred from GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC by you or anyone acting at your direction or under your control.

7.  All Documents Concerning all domestic and foreign bank, brokerage, exchange, or other financial accounts, including any Cryptocurrency wallet, held by you, or subject to your direct or indirect control, since January 1, 2014.

8.  Documents sufficient to identify all GAW Miners investors by name.  For each Person identified, provide the home address, work address, email address, phone number(s), and/or any other form of identifying information.

9.  For each investor identified in response to Item 8 above, Documents sufficient to disclose:
    a. the amount invested;
    b. the type of currency(ies) used to invest;
    c. the date(s) of investments;
    d.  the type of ownership interest each investor received; and
    e. whether, when, and how much of each investors' principal has been returned to them.

10. For each investor identified in response to Item 8 above, all Documents Concerning Agreements or contracts between GAW Miners and the investor.

11. For each investor identified in response to Item 8 above, all Documents Concerning the investment of (or other use of) those funds by GAW Miners, the terms of the investments, and the current location of investor funds.

12. For each investor identified in response to Item 8 above, all periodic or other account statements for that investor.

13. Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in GAW Miners.

14. All Communications with investors or prospective investors in GAW Miners, PayBase, PayCoin, ZenMiner and/or BTC.

15. All Documents and Communications relating to the Initial Coin Offering, including, without limitation, any solicitations, offering memoranda, marketing materials, prospectuses, and public filings.

16. All Documents Concerning all Persons who purchased PayCoin during its Initial Coin Offering.

17. All Communications with purchasers and potential purchasers of PayCoin.

18. All marketing materials you reviewed concerning Hashlets.

19. All Documents reflecting an accounting of the proceeds obtained by GAW Miners and/or ZenMiner from mining Cryptocurrency.

20. All Communications regarding sales or potential sales of Hashlets, including, without limitation, Shopify records and GAW Miners' and/or ZenMiner's records.

21. All Communications regarding the total hashing power of all Hashlets sold or given away by GAW Miners and/or ZenMiner.

22. All Documents Concerning or containing Communications regarding a comparison of the total hashing power of all Hashlets sold or given away by GAW Miners and/or ZenMiner to the total Computing Power used to mine Cryptocurrency or Hash Points for Hashlet purchasers.

23. All Documents reflecting an accounting of the Payouts made by GAW Miners and/or ZenMiner to Hashlet purchasers.

24. All Documents reflecting the creation, operation and mining of ZenPool.

25. All Documents reflecting whether any Pools were mined by GAW Miners to provide payouts to Hashlet owners, including without limitation, the dates on which the Pools were mined, the names of the Pools, the computing power applied to the Pools, verification of the account set established to accept any payouts, and the amount of the daily payouts.

26. All Documents Concerning the claim by GAW Miners and/or ZenMiner that a Hashlet is "obsolete-proof."

27.  All Documents Concerning the claim by GAW Miners and/or ZenMiner that a Hashlet adjusts "to always remain profitable."

28.  All Documents and Communications Concerning a possible business relationship between BTC, GAW Miners, PayCoin and/or PayBase and Target.

29.  All Documents and Communications Concerning a possible business relationship between BTC, GAW Miners, PayCoin and/or PayBase and Amazon.

30.  All Documents and Communications Concerning a possible business relationship between BTC, GAW Miners, PayCoin and/or PayBase and Walmart.

31.  All Documents and Communications Concerning a possible business relationship between BTC, GAW Miners, PayCoin and/or PayBase and XPY Technologies.

32.  All Documents and Communications Concerning the potential issuance of a PayCoin MasterCard debit card.

33.  All Documents and Communications Concerning the potential issuance of a PayCoin Visa debit card.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions in the space provided. If you need additional space for any response, you may attach additional pieces of paper.**

Today's date: _____

1.  What is your full name?

    _____

2.  Have you ever been known by any other name?  Yes __ No __

    If yes, list each such name and the period(s) in which you were known by that name.

    _____
    _____
    _____

3.  Date and Place of Birth?

    _____

4.  Country of Citizenship?

    _____

5.  Marital Status?  Married __ Divorced __ Single __

    If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; (iii) your spouse's birth name, if different; (iv) your spouse's age; and (v) your spouse's occupation.

    _____
    _____
    _____

6.  List the names, ages and occupations of your children, if any.

    _____
    _____
    _____

7.  List all residences you occupied at any time during the last [three] years, including vacation homes, beginning with your current residence. For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

    _____
    _____
    _____
    _____

Background Questionnaire
Page 2

8. List all telephone numbers and telecommunication services that were in your name or that you regularly used at any time during the last [three] years. Include all residential, business, cellular, credit card, and VOIP telephone numbers, including those listed in your response to question 7, and services such as GoogleVoice, Skype, video conference services. For each telephone number, state the name(s) of the corresponding carrier(s) (*e.g.*, AT&T, Verizon, Vonage, Skype, etc.).

_____

_____

_____

9. List the universal resource locator (URL) for all websites or blogs that you established or for which you had the authority to control content, at any time during the last [three] years. For each website, state the name(s) of the domain name registrar (*e.g.* GoDaddy) through which the URL was obtained, the name(s) of all individuals or entities who provided web site hosting or design services, whether the website contained primarily business or personal information, and the time period in which it was active.

_____

_____

_____

10. List all electronic mail addresses and social networking accounts (*e.g.* Facebook, LinkedIn, Twitter, Instagram, Flickr, and Google+) that were in your name or that you regularly used at any time during the last [three] years. Include all personal, business and shared electronic mail addresses and social networking accounts. For each electronic mail address and social networking account, state the name(s) of the corresponding internet service provider(s) (*e.g.*, Google, Yahoo, AOL, or your employer), whether the address was used primarily for business or personal correspondence, and the time period in which it was active.

_____

_____

_____

_____

11. List all usernames for instant messaging and similar electronic communication services (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in your response to questions 8 through 10, that were in your name or that you regularly used at any time during the last [three] years. Include all personal, business and shared addresses. For each username, state the name(s) of the communication service provider (*e.g.*, Google, AOL, etc.), whether the address was used primarily for business or

Background Questionnaire
Page 3

personal correspondence, the time period in which it was active, and the name of the
software application(s) (*e.g.*, GTalk, ICQ, MSN Messenger) you used to access it.

_____
_____
_____

12. List all internet message boards or discussion forums (including, but not limited to,
Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a
member or on which you posted any messages at any time during the last [three] years.
For each message board or discussion forum, state the service provider and your member
name or identification information.

_____
_____
_____

## PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held
company? Yes __ No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was
listed, and state your positions (including membership on any Board or management
committees) and the dates you held each position.

_____
_____
_____

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per
cent or more of any class of equity securities of any publicly held company? Yes __ No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was
listed, and state the amount, percentage, and dates of your ownership.

_____
_____
_____

Background Questionnaire
Page 4

## PRIVATELY-HELD COMPANIES

15.    Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?   Yes__  No__

       If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

       _____
       _____
       _____

16.    Are you now, or have you ever been, a manager or a member of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?   Yes__  No__

       If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

       _____
       _____
       _____

## SECURITIES ACCOUNTS

17.  List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last [three] years.  Include all foreign accounts.  For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (*i.e.*, cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

       _____
       _____
       _____
       _____
       _____

Background Questionnaire
Page 5

18. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17, in which you had any direct or indirect beneficial interest at any time during the last [three] years. For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____

19. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17 or 18, over which you had any control at any time during the last [three] years. For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____

BANK ACCOUNTS

20. List all accounts you have held in your name at any financial institution (*i.e.*, bank, thrift, or credit union) at any time during the last [three] years. Include all foreign accounts. For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (*i.e.*, checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

_____
_____
_____
_____
_____

21. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20, in which you had any direct or indirect beneficial interest at any time during the last [three] years. For each such account, provide the information requested by question 20.

_____
_____
_____

Background Questionnaire
Page 6

_____
_____

22. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20 or 21, over which you had any control at any time during the last [three] years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____

23. List any other accounts (including foreign accounts), other than those listed in your answers to questions 20 through 22, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds in the last [three] years, including, but not limited to, PayPal accounts.  For each such account, provide the information requested by question 20.

_____
_____
_____

## PRIOR PROCEEDINGS

24. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the organization or agency; and (iii) the date(s) on which you testified.

_____
_____
_____
_____

Background Questionnaire
Page 7

25. Have you ever been deposed in connection with any court proceeding?  Yes __ No __

    If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the date(s) on which you were deposed.
    _____
    _____
    _____
    _____

26. Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes __ No __

    If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v) the date of the outcome.
    _____
    _____
    _____
    _____

27. Have you ever been a defendant in any action (other than those listed in response to question 26) alleging violations of the federal securities laws?  Yes __ No __

    If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.
    _____
    _____
    _____
    _____

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __ No __

    If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.
    _____
    _____
    _____
    _____

Background Questionnaire
Page 8

## EDUCATIONAL HISTORY

29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

Name of School

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

Name of School

| City | State | Country | Zip Code |
|---|---|---|---|

Dates of Attendance: Month/Year to Month/Year          Degree/Major          Month/Year of Degree

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school. For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

Background Questionnaire
Page 9

## PROFESSIONAL LICENSES/CLUBS

31. Do you hold, or have you ever held, any professional license?  Yes__  No __

   If yes, for each such license, identify: (i) the license number or attorney bar number;
   (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such
   license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against
   you: and (vi) the outcome of any such disciplinary proceeding (e.g., reprimand,
   suspension, revocation).

   _____
   _____
   _____
   _____

32. Are you, or have you ever been, a member of any professional or business club or
   organization?  Yes __  No __

   If yes, list for each: (i) the name of the club or organization; (ii) its address; (iii) the
   date(s) of your membership; and (iv) service in any governance roles (e.g., board
   member, committee member, etc.) including title and dates of service.

   _____
   _____
   _____
   _____

33. Are you, or have you been in the last [three] years, a member of any social clubs,
   charities or nonprofit organizations?  Yes ___  No ___

   If yes, list for each: (i) the name of the social club, charity or nonprofit organization;
   (ii) its address; (iii) the date(s) of your membership; and (iv) service in any governance
   roles (e.g., board member, committee member, etc.) including title and dates of service..

   _____
   _____
   _____
   _____

## EMPLOYMENT HISTORY

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser,
   investment company, municipal securities dealer, municipal advisor, transfer agent, or

Background Questionnaire
Page 10

nationally recognized statistical rating organization?  Yes ___ No ___

If yes, list for each: (i) the jurisdiction of the entity; (ii) your CRD number; (iii) the entity's CRD number; (iv) the entity's SEC File number; (v) the entity's CUSIP number; and (vi) any foreign registration information similar to the foregoing.

_____
_____
_____
_____
_____
_____
_____

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae.

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Background Questionnaire
Page 11

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

Background Questionnaire
Page 12

| Employer's Name/Self-Employment | | | |
| --- | --- | --- | --- |
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

## CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (09-14)

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

3

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC). **\*\*_Any proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission._\*\***

General Instructions ........................................................................................................................................................1

Delivery Formats............................................................................................................................................................2

I.    *Concordance*® Imaged Productions.................................................................................................................2

    1. Images ...............................................................................................................................................................2

    2. *Concordance Image*® or Opticon Cross-Reference File..................................................................................2

    3. *Concordance*® Data File..................................................................................................................................3

    4. Text ...................................................................................................................................................................3

    5. Linked Native Files ..........................................................................................................................................3

II.   Native File Productions without loadfiles..................................................................................................3

III.  Adobe PDF File Productions…….....................................................................................................3

IV.  Audio Files ................................................................................................................................................4

V.   Video Files..................................................................................................................................................4

VI.  Electronic Trade and Bank Records .........................................................................................................4

VII.  Electronic Phone Records.........................................................................................................................4

**General Instructions**

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

Rev 10/2014

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
    a. A list of each piece of media included in the production with its unique production volume number
    b. A list of custodians, identifying the Bates range for each custodian.
    c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range
3. All submissions must be organized by custodian unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All data productions must be produced using industry standard self-extracting encryption software.
11. Passwords for documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
12. All productions should be produced free of computer viruses.
13. Additional technical descriptions can be found in the addendum to this document.

   *Please note that productions that come via United States Postal Service are subject to Mail Irradiation, as a result electronic productions may be damaged.*


**Delivery Formats**

I. *Concordance® Imaged Productions*
   The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

   1. Images
       a. Black and white images must be 300 DPI Group IV single-page TIFF files.
       b. Color images must be produced in JPEG format.
       b. File names cannot contain embedded spaces or special characters (including the comma).
       c. Folder names cannot contain embedded spaces or special characters (including the comma).
       d. All TIFF image files must have a unique file name, i.e. Bates number.
       e. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
       f. The number of TIFF files per folder should not exceed 500 files.
       g. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
       h. AUTOCAD/photograph files should be produced as a single page JPEG file.

2. **Concordance Image® OR Opticon Cross-Reference File**
   The image cross-reference file to link the images to the database should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pag*

3. *Concordance*® **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance*® database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance*® default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
   c. Date fields should be provided in the format: mm/dd/yyyy
   d. Date and time fields must be two separate fields.
   e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
   f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
   g. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.
   h. BEGATT and ENDATT fields must be two separate fields.
   i. A complete list of metadata fields is available in Addendum A to this document.

4. **Text**
   Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. (Please note in the cover letter if any non-ANSI text files are included in the production.) Extracted text must be in a separate folder, one text file per document. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

II. **Native File Production without Loadfiles**
   With prior approval, native files may be produced without loadfiles. The files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

III. **Adobe PDF File Production**
   With prior approval, Adobe PDF files may be produced in native file format.
   1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
   2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document.
   3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
   4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

**V.    Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade and bank records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

    a.  The metadata that must be included is outline in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

Rev 10/2014

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated<br>for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated<br>in each record representing an attachment "child"<br>document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in<br>each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document<br>originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple<br>entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple<br>entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be<br>combined with the DATE_SENT field; |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

5

U.S. Securities and Exchange Commission
Data Delivery Standards

| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Loadfile:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

Rev 10/2014

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

 **Shipment Receipt**

**Transaction Date:** 30 Jun 2015      **Tracking Number:**     1ZA376E10196491992

---

### 1   Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Carlos Garza | SEC-Boston REGIONAL | SEC-Boston REGIONAL |
| 136 Hillcrest Terrace | Gretchen Lundgren | Gretchen Lundgren |
| BRATTLEBORO VT 053014103 | 33 Arch Street | 33 Arch Street |
| Residential | 23rd FL | 23rd FL |
| | BOSTON MA 02110 | BOSTON MA 02110 |
| | Telephone:617-573-4557 | Telephone:617-573-4557 |

---

### 2   Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. 1.0 lbs<br>(1.0 lbs billable) | UPS Letter | | |

---

### 3   UPS Shipping Service and Shipping Options

| Service: | UPS Next Day Air | | |
|---|---|---|---|
| Guaranteed By: | 12:00 PM Wednesday, Jul 1, 2015 | | |
| Shipping Fees Subtotal: | 33.65 USD | **Additional Shipping Options** | |
| Transportation | 25.15 USD | Quantum View Notify E-mail Notifications: | |
| Fuel Surcharge | 1.45 USD | 1 lundgreng@sec.gov: Ship, Exception, Delivery | No Charge |
| Residential Surcharge | 3.50 USD | | |
| Delivery Area Surcharge | | | |
| Package 1 | 3.55 USD | | |

---

### 4   Payment Information

Bill Shipping Charges to:        Shipper's Account A376E1

| Charges: | 33.65 USD |
|---|---|

**A discount has been applied to the Daily rates for this shipment**

| Negotiated Charges: | 8.27 USD |
|---|---|
| Total Charges: | 8.27 USD |

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.